

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GERALD C. MANN<br>ATTORNEY GENERAL

Hon. Thomas R. Chandler
County Attorney
Robertson County
Franklin, Texas

Dear Sir:

Opinion No. O-1913
Re: Necessity for election to increase
tax rate in Bremond Independent
School District.

We are in receipt of your letter of January 30,
1940, in which you submit the following facts to this department for an opinion:

On September 22, 1919, an election was held in the
Bremond Independent School District "to determine whether
or not a local tax should be assessed and collected in the
Bremond school district not to exceed 50 cents on the $100
valuation of property, for the support and maintenance of
schools within the district." This election failed to carry.

On October 29, 1920 another election was called
"to determine whether or not school board shall have power
to annually levy and collect a tax upon all taxable property
in the Bremond Independent District for support and maintenance of public free schools in said district; of and at the
rate of not exceeding 50 cents on the $100 valuation of all
taxable property in the district."

This election was apparently held in Bremond on
November 23, 1920 and the following entry was made in the
Minutes of the Board under date of November 30, 1920:

"Returns of the election for local maintenance
tax held on November 23, 1920 were returned by the
president and the talley sheets being examined and
the returns of the manager of the election, Charles
E. Lloyd, were examined and the board found they
were legally cast. For the tax not exceeding 50
cents on the $100 valuation there were cast 82 votes
for and against the same tax 11 votes; there being

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

a total of 99 votes. Therefore it was declared that the local tax carried and that the school board shall have power to annually levy and collect a tex upon all taxable property in said district for support and maintenance of public schools in said Bremond Independent School District of and at the rate of not exceeding 50 cents on the $100.00 valuation of taxable property in said district, to be levied and collected for the year 1921, and annually thereafter unless it be discontinued as provided by law."

We understand that no election has been held since that time changing the tax rate that may be levied and collected for the support and maintenance of the public schools in said district.

In December, 1920, another election was called to be held on the 28th day of January, 1921, to determine whether the district should issue bonds in the amount of fifty thousand dollars for the purpose of constructing and equipping a school building, "and whether or not there shall be annually levied, assessed and collected on all taxable property in said district for the current year and annually thereafter while said bonds, or any of them, are outstanding, a tax sufficient to pay the current interest on said bonds and provide a sinking fund sufficient to pay the principal at maturity ..."

The Board of Trustees canvassed the election and entered in the minutes on January 29, 1921 an order finding that said bond election had carried, together with the authorization to annually levy, assess and collect a sufficient tax to pay the current interest on said bonds and provide a sufficient sinking fund to pay the principal at maturity.

Acting under the authority of the foregoing elections, the Board of Trustees of the Bremond Independent School District has been levying a local maintenance tax and tax for the purpose of servicing these bonds; the combined rate not exceeding 50¢ on the $100 valuation. It appears that it requires about 30¢ on the $100 valuation to service the bonds, leaving 20¢ on the $100 valuation for operating the schools.

It has been suggested by the school authorities that the Board is authorized to levy a tax at the total rate of 80¢ on the $100 valuation, since the election held in

Hon. Thomas R. Chandler, Page 3

1920 authorized a 50¢ limit for support and maintenance of the public free schools, and the bond election being subsequent thereto, they were authorized by that election to levy and collect a sufficient tax in addition to the 50¢ levy to service the bonds.

You request our opinion as to whether the Board of Trustees is authorized by virtue of the above tax elections to levy taxes at a rate not to exceed $1.00 on the $100.00 valuation, being the present statutory maximum rate, without any further election.

We shall not attempt to review the early history of the Bremond Independent School District, but in 1919 the Legislature in extending the boundaries of said district, provided in House Bill 151, Ch. 53, Special Laws of Texas, 2nd Called Session, 46th Legislature, p. 135, as follows:

"Section 1. That there is hereby created and established in Robertson County, Texas, and incorporated for free school purposes only, under the name of, and to be known as, the Bremond Independent School District, which shall include within its limits the following described territory: (Setting out the field notes)

"Section 2. The said Bremond Independent School District shall have and exercise, and is hereby vested with all the rights, powers, privileges and duties of a town or village incorporated under the General Laws of the State for free school purposes only, and the Board of Trustees for the said Bremond Independent School District shall have and exercise, and is hereby vested and charged with all the rights, powers, privileges and duties conferred and imposed by the General Laws of the State upon Trustees of Independent School Districts created and organized for school purposes only under the General Laws of the State. Among the rights, powers, privileges and duties herein mentioned shall be the rights and powers of levying and collecting taxes, for the issuance of bonds and the erection of school houses, purchasing sites and equipment therefor, and the maintenance of public schools as is provided under General Laws for the levying and collection of taxes for the said purposes in towns and villages incorporated for free school purposes only; provided that the school tax heretofore voted

Hon. Thomas R. Chandler, Page 4

in Bremond Independent School District, in the
Wootan Wells Common School District and the Mammond
Common School District may continue to be collected
in the territory comprising said district, respec-
tively, and applied as the Board of Trustees may
see fit, until the Independent School District
hereby created shall, as a whole, vote a school
tax after which the tax so voted shall be in lieu
of any and all school taxes heretofore voted in
said school district, and all uncollected taxes
in said district shall be collected and applied
as the Board of Trustees of the newly created
district shall deem wise."

In considering the statutes in force at the time
the Bremond Independent School District authorized the levy
and collection of the above-mentioned taxes, it is necessary
to bear in mind the distinction between a town or village
incorporated for free school purposes only, and a city or
town which had acquired exclusive control of the public free
schools within its limits. It will be noted that House
Bill No. 151, 2nd Called Session, 36th Legislature, vested
the Bremond Independent School District with the powers,
privileges and duties of a "town or village incorporated
under the General Laws of the State for free school purposes
only," and with reference to the powers of levying and col-
lecting taxes "for the issuance of bonds and the erection
of school houses, purchasing sites and equipment therefor,
and the maintenance of public schools," the same powers were
granted as were "provided under General Laws for the levying
and collection of taxes for the said purposes in towns and
villages incorporated for free school purposes only."

Chapter 16, Title 48, Revised Statutes, 1911 (Com-
plete Texas Statutes, 1920), provided for the incorporation
of a town or village for free school purposes only. After
setting out the method for such incorporation, it was pro-
vided in Article 2851:

"... And provided also that all school incor-
porations hereafter formed under the provisions of
this Chapter shall have the right to levy and collect
taxes and issue bonds for school purposes, the
same as school incorporations heretofore formed..."

Under this same Chapter, it was provided in Article
2857, R. S., 1911, (Complete Texas Statutes, 1920, Article
2857) as follows:

"Trustees of a district that has been or may hereafter be, incorporated under general or special laws, for school purposes only, shall have power to levy and collect an annual ad valorem tax not to exceed fifty cents on the one hundred dollar valuation of taxable property of the district, for the maintenance of schools therein, and a tax not to exceed twenty-five cents on the one hundred dollars for the purchase of sites and the purchasing, construction, repairing or equipping public free school buildings within the limits of such incorporated districts; provided that the amount of maintenance tax, together with the amount of bond tax of the district, shall never exceed fifty cents on the one hundred dollars valuation of taxable property. Said trustees shall have power to issue coupon bonds of the district for building purposes, to be made payable not exceeding forty years from date, in such sums as they shall deem expedient, to bear interest not to exceed five per cent per annum; provided, that when such buildings are to be wooden the bonds herein provided for shall not run for a longer period than twenty years; provided, that the aggregate amount of bonds issued for the above named purpose shall never reach such an amount that the tax of twenty-five cents on the hundred dollars valuation of property in the district will not pay current interest and provide a sinking fund sufficient to pay the principal at maturity; and provided, further, that no such tax shall be levied and no such bonds issued until after an election shall have been held, wherein a majority of the taxpaying voters voting at said election shall have voted in favor of the levying of said tax, of the issuance of said bonds, or both, as the case may be; provided, that the specific rate of tax need not be determined in the election. (Acts 1905, p. 263, sec. 154. Amended Acts 1909, p. 17.)"

Although the present Article 7, Sec. 3 of the Texas Constitution proclaimed January 20, 1927, has raised the limitation upon the tax rate in school districts to One Dollar on the One Hundred Dollar valuation on property subject to taxation in such districts, at the time Bremond Independent School District set its tax rate by election, Article 7, Sec. 3 of the Texas Constitution provided, in part, as follows:

Hon. Thomas R. Chandler, Page 6

"... And the legislature may authorize an
additional ad valorem tax to be levied and collected
within all school districts heretofore formed or
hereafter formed, for the further maintenance of
public free schools, and the erection and equipment
of school buildings therein; provided, that a majority
of the qualified property taxpaying voters of the
district voting at an election to be held for that
purpose shall vote such tax, not to exceed in any
one year fifty cents on the one hundred dollar
valuation of the property subject to taxation in
such district, but the limitation upon the amount
of school district tax herein authorized shall not
apply to incorporated cities or towns constitut-
ing separate and independent school districts."

Considering the two elections held in this school
district in 1920 and 1921 in the light of the statutory and
constitutional limitations upon said school district, it is
clear that in authorizing the Board of Trustees to annually
levy and collect a tax upon all taxable property in said
district for support and maintenance of public schools there-
in, at the rate of not exceeding fifty cents on the one
hundred dollar valuation of taxable property in said district,
it was intended to set the maximum rate allowed by law which
would require that the combined rates for maintenance and
bonds should not exceed fifty cents on the one hundred dol-
lar valuation. To give any other construction to the inten-
tion of the voters would require a presumption they intended
to do an act forbidden by the constitutional and statutory
laws of the State.

Notwithstanding the constitutional and statutory
maximum tax rate for school districts were subsequently
raised from fifty cents to One Dollar on the One Hundred
Dollar valuation, such change did not of itself increase
the tax rate theretofore voted by school districts, but
merely extended the maximum rate, so that the property tax-
paying voters in school districts might authorize their
governing boards in an election called for that purpose
to levy and collect a greater tax. Constitution, Art. 7,
Sec. 3; R.C.S. of Texas, 1925, Articles 2784, 2785, 2790,
2799, 2800 and 2801.

Under the facts stated in your letter, the voters
of Bremond Independent School District, qualified to vote
in such an election, have never consented to be taxed at a

Hon. Thomas R. Chandler, Page 7

rate greater than the maximum rate which they voted in 1920 which was, in the words of the statute, that "the amount of maintenance tax, together with the amount of bond tax of the district, shall never exceed 50¢ on the one hundred dollars valuation of taxable property."

We therefore answer your question in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By      *Cecil C. Cammack*
         Cecil C. Cammack
         Assistant

CCC:pbp

APPROVEDFEB 14, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN